UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JEFFREY LILL, JR.,

                   Plaintiff,

v.                                                   **COMPLAINT**

UNITED STATES OF AMERICA,

and

PATRICK R. DONAHOE,
POSTMASTER GENERAL OF THE UNITED STATES,

                   Defendants.

Plaintiff Jeffrey Lill, Jr. comes before this Court and alleges as follows:

## I. PRELIMINARY STATEMENT

1.      This is an action brought under the Federal Tort Claims Act, 28 USC § 1346(d), §§ 2671 - 2680.

2.      Plaintiff is claiming damages by Defendant United States of America because of the negligence by the United States Postal Service ("USPS") in handling a package containing a toxic substance to which Plaintiff was exposed while a USPS employee.

## II. JURISDICTION

3.      Jurisdiction is conferred upon this Court by 28 USC § 1346(d) in that an administrative claim has been presented to the agency and denied, and a request for reconsideration was also denied. Thus, Plaintiff has exhausted his administrative remedies.

## III. VENUE

4.      This action is brought in United States District Court for the judicial district in which Plaintiff currently resides.

## IV.  PARTIES

5.      Plaintiff Jeffrey Lill, Jr. is a citizen of the United States, currently residing in Rochester, New York.  At the time of the incident which is the subject of this action, Plaintiff resided at 423 Highway 466, Lady Lake, Florida.

6.      Defendant Patrick R. Donahoe is the Postmaster General of the United States and is responsible for the operations of the USPS, including the Orlando, Florida Processing Annex, where Plaintiff was employed at the time of the incident herein.

## V.  FACTS

7.      On February 4, 2011, Plaintiff was working as a supervisor at the USPS Orlando Florida Processing Annex at 2036 East Landstreet Road.

8.      On that date, Plaintiff was approached by a fellow employee regarding a leaking package located within the facility.  Plaintiff went to the site of the leak, where there was a foul odor emanating, at which time he notified his supervisor by email of the event and removed the package to a hazmat area.  This was witnessed by several employees.

9.      Mr. Lill noticed that there appeared to be writing on the package which indicated that it may have originated in Yemen.

10.     Despite Plaintiff's notification to his supervisor, the facility took no action with regard to the package, nor did USPS formally acknowledge that the incident took place.

11.     Over the next few months, Plaintiff's health deteriorated significantly and he was forced to stop working in June 2011 and was finally approved for disability retirement by the Office of Personnel Management in April 2012.  Nonetheless, USPS continued to deny the incident of February 4, 2011 ever took place, although by this time they did attempt to modify their position by stating that what Plaintiff encountered was residue from a previous incident which occurred on February 2, 2011, which USPS had indeed acknowledged and processed.

12.     On August 22, 2013, some thirty months after the original incident, the Department of Labor's Office of Workers' Compensation Programs ("OWCP") "accepted" a claim for workers' compensation on the ground of "contact or exposure to other viral diseases."  However, at virtually the same time, in response to the administrative claim submitted to USPS in February 2013, the USPS National Tort Center responded by stating "after the incident at issue, an investigation of this matter failed to established a negligent act or omission on the part of the US Postal Service or it's

employees.  In fact, our investigation reveals that the allegations and circumstances surrounding this incident are not accurately represented, and the alleged toxic spill/exposure upon which Mr. Lill basis his claim did not occur."

13.    Because Defendant denies the incident ever took place, the FECA claim that was accepted does not pertain to the incident of February 4, 2011, and because the subsequent negligence of Defendant was not eh proximate cause of the toxic exposure, but was the cause of the severe exacerbation which followed, FECA is not a bar to FTCA jurisdiction in this Court.

## V.  AS AND FOR A FIRST CAUSE OF ACTION

14.    USPS has specific written procedures and protocols for responding to hazardous materials, including but not limited to the following:

- Get together with the supervisor to evaluate the potential nature of the spill;
- Alert the Postal Inspectors if warranted;
- Alert employees and evacuate them if necessary;
- Shut down the machinery, tum on the air vents, open the doors, etc.;
- Meet the PI or HazMat crew and escort them to the spill;
- Oversee the safety of USPS employees while the inspection is taking place;
- Complete and file reports, including the Form 1770;
- Follow up with the inspection team and report the findings to you; and
- Ensure that the proper reports are properly filed.

15.    The USPS Logistics and Distribution Center in Orlando, Florida, where Mr. Lill was employed also had a specific "hazardous materials release/spill response plan" in place at this time, containing the same requirements.

16.    There was also a special "stand-up talk protocol" in place at the Orlando facility particularly pertaining to mail "that appears to have originated in Yemen", requiring that such packages be held and the Postal Inspection Service be contacted to investigate.

17.    Defendant USPS violated its protocols for handling hazardous materials in that it did not adequately document the event of February 4, 2011, did not identify the package or its contents to which Plaintiff was exposed and, in fact, destroyed or disposed of said package without any record having been made of its existence.

18.    Because of Defendant's negligence in its handling of this incident, it was impossible for medical personnel treating Plaintiff to ascertain what he was exposed to and properly treat him.

19.    In late 2013, after many visits to medical personnel and attempts by doctors to diagnose what Plaintiff was suffering from and what he had been exposed to, it was determined by

his response to certain treatments that his condition "is highly suggestive of organophosphate poisoning", suggestive of nerve gas.  However, because the original package was never properly processed by USPS and its contents subject to analysis, this is merely an educated guess.

20.     As a result of this toxic exposure, Plaintiff has suffered grievous health problems, causing drastic changes in his lifestyle and environment, and causing severe emotional and financial harm to him and his family.

## VI. AS AND FOR A SECOND CAUSE OF ACTION

21.     Due to USPS' original negligence in the handling of the package following Plaintiff's exposure and its subsequent disingenuous refusal to admit that the incident ever took place, it was two and one half years before Plaintiff was afforded any relief by OWCP, and such relief has been clearly inadequate for the severe physical and psychological harm he has suffered.

22.     USPS furthermore attempted to have Plaintiff's position terminated for cause on the ground that he had fabricated his medical condition, a claim which was absolutely untrue and which caused severe emotional distress to Plaintiff, in addition to the physical harm which he had already suffered due to USPS' prior negligence.

23.     Upon information and belief, the actions taken by Plaintiff's immediate supervisor, Cynthia Hickman, in claiming that he had fabricated his illness and medical documentation in support of his claim was done with malicious intent and with the full knowledge of Ms. Hickman's supervisors within USPS.

## VII. DAMAGES

24.     As a result of USPS' continued negligence from February 4, 2011 to date and their consistent refusal to acknowledge their responsibility in Plaintiff's case, Plaintiff has suffered grievous and irreversible physical and emotional harm, and has likely had his life expectancy significantly shortened.

25.     Plaintiff and his family have been forced to sell their home and have spent considerable monies that they do not have to construct an appropriate environment for him, as his organophosphate poisoning has rendered him over susceptible to virtually all chemicals and environmental stimuli, forcing him to live "in a bubble" and unable to interact to any meaningful degree with the outside world.

WHEREFORE, Plaintiff demands judgment against Defendants United States of America in the amount of TWENTY MILLION DOLLARS, the amount claimed in the original administrative Complaint filed with USPS in February 2013, together with the costs and disbursements of this action, including reasonable attorneys' fees.

Dated: July 25, 2014
      Lewiston, New York

Dennis A. Clary, Esq
Attorney for Plaintiff
755 Center St., PO Box 1044
Lewiston NY14092
716 754 4869 ext. 12
dennis@niagaralaw.com