UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JEFFREY LILL, JR.,

                                 Plaintiff,                DECISION AND ORDER

-vs-

                                                     14-CV-6422 CJS

UNITED STATES OF AMERICA, et al.,

                                 Defendants.

_____

APPEARANCES

For the Plaintiff:                    Dennis A. Clary, Esq.
                                       755 Center Street
                                     P.O. Box 1044
                                     Lewiston, NY 14092
                                     Tel.: (716) 754-2819

For the Defendant:                William Gillen Powers, Esq.
                                     U.S. Department of Justice
                                     Civil Division, Environmental Torts Branch
                                     1331 Pennsylvania Avenue, NW
                                     Washington, DC 20004
                                     Tel: (202) 616-9386

INTRODUCTION

This is an action brought pursuant to the Federal Tort Claims Act ("FTCA") by a former employee of the United States Postal Service ("USPS") who maintains that he was injured by being exposed to a piece of mail containing toxic material.  Now before the Court

is Defendants' motion (Docket No. [#6]) to dismiss the action for lack of subject-matter jurisdiction.  More specifically, Defendants contend that Plaintiff's sole remedy lies under the Federal Employees' Compensation Act ("FECA"), pursuant to which he is already receiving benefits.  The application is granted.

BACKGROUND

Unless otherwise noted, the following facts are taken from Plaintiff's Complaint [#1] and the documents submitted in connection with the motion to dismiss.  On February 4, 2011, Plaintiff was working as a supervisor for the USPS in Orlando, Florida, when a subordinate informed him of a strong odor emanating from a mail bag.  Plaintiff and USPS disagree as to what happened next.

Plaintiff maintains that he investigated and discovered that a package, possibly bearing a return address from Yemen, was leaking a foul-smelling brown liquid.  Moreover, In his FECA claim Plaintiff went into more detail explaining:

> The top of the box had cracked open and he saw inside 2/3 light colored (whitish) canisters or jugs (maybe plastic) with wire/tubes connecting them. On the outside of the box he noticed a return address written in RED ink. Part of the address was written in Arabic (or another language using different letters/characters than ours).  However, Yemen was written in our alphabet. The "to" address was written in BLACK ink.  It was addressed to a 328 (Orlando) zip code and the last digits were ???.  There was no customs tag/bill of lading, bar code, postage stamp on the package.

Docket No. [#6-5] at p. 5. In any event, Plaintiff claims that he transported the item to a "hazmat area," in the course of which he touched the leaking substance and breathed its fumes.

USPS, on the other hand, denies that any spill or leaking package was discovered on February 4, 2011.  Instead, USPS maintains that a chemical spill occurred *two days earlier*, on February 2, 2011, and was cleaned up.  USPS further maintains that, at most,

on February 4, 2011, Plaintiff smelled residue from the earlier spill.

What is undisputed is that before Plaintiff left work on February 4, 2011, he sent an email to his supervisor, Cynthia Hickman ("Hickman"), about the incident.  The email, which was sent on February 4, 2011 at 8:18 p.m., states as follows:

> *Subject:  Possible Hazmat/Small Apps*
>
> *Cynthia-*
>
> *At approximately 1840 hrs, employee Paz Oquendo came to me to report a strong odor on S2 of the small apps [Automated Package Processing System][1] in the belly. [According to Plaintiff, the "belly" is the interior area of a large conveyor-belt APPS machine]*
>
> *I immediately cleared the area of employees (sent to breakroom) <u>and took the gpc [general purpose container][2] of empty sacks outside to the Haz-Mat shed.</u>  The odor is strong and isolated to the back of the belly of the small apps.  I then assisted TME's in opening all doors on the APPS side of the building, front and back.  MDO Cynthia Hickman was also notified during this time period.  A portable fan is currently being used to assist in airing out the area as it is still lingering in this area.  No employees are currently working in this area.  T3 has been notified (MDO - Carlos Santos).*
>
> *Jeff Lill*

(emphasis added).  The striking feature of this email, in the Court's view, is the absolute lack of any mention of a leaking package, let alone one from Yemen with cannisters or jugs connected by wires or tubing. Instead, Plaintiff's statement indicates only that he moved

---

[1]According to the USPS website's List of Acronyms/Abbreviations, "APPS" is an abbreviation for "Automated Package Processing System." See, http://about.usps.com/publications/pub32/pub32_acn.htm

[2]According to the USPS website's List of Acronyms/Abbreviations, "GPC" is an abbreviation for "general purpose container." See, http://about.usps.com/publications/pub32/pub32_acn.htm

a container of empty mail sacks.[3]  Plaintiff, though, in his Complaint in this action, which did not attach a copy of his email, implies that his email specifically notified Hickman about a leaking package.[4]

Of course, since the email did not mention a leaking package from Yemen  with cannisters or jugs connected by wires or tubing, or any package at all, it also did not request that any such package be retained or analyzed.  Nevertheless, Plaintiff now faults USPS for not retaining and testing the alleged package which, he maintains, was probably disposed of by a USPS supervisor on or about February 4, 2011.  On this point, Plaintiff suggests that by failing to retain the alleged package, USPS violated its own protocols, and "destroyed the evidence."[5]

In any event,  after February 4, 2011, Plaintiff claims that he began experiencing flu-like symptoms, and that by June 2011, he became unable to work due to those symptoms, as well as to an unrelated injury to his back.  Plaintiff maintains that his medical condition, which he says is "highly suggestive of organophosphate poisoning," resulted from his exposure to the alleged leaking substance, though he admits that is just an "educated guess" inasmuch as the alleged toxic substance was never analyzed.[6]  With respect to his condition, it is true that at least one of Plaintiff's doctors believes that his present illness must be related to his alleged exposure on February 4, 2011. However, her opinion in this regard is based solely upon information provided to her by Plaintiff.

---

[3]This discrepancy is frankly unfathomable to the Court. In the post 9/11 world in which we live, it strains the bounds of credulity to accept that  Plaintiff would not have immediately reported to his supervisor that the  package at issue came from Yemen and contained what could reasonably surmised to be some kind of bomb.

[4]*See, e.g.*, Complaint at ¶ ¶ 8, 10.

[5]Pl. Memo of Law [#11] at p. 4.

[6]Complaint ¶ 19.

On January 25, 2012, Plaintiff filed an application for FECA workers compensation benefits with the U.S. Department of Labor's Office of Workers' Compensation Programs ("OWCP"), claiming that he had suffered a work-related injury to his back, as well as a work-related injury due to chemical exposure.  However, OWCP denied the claim, without prejudice to him submitting a new claim, in part because Plaintiff had purportedly used the wrong application form.

In April, 2012, the U.S. Office of Personnel Management ("OPM") approved Plaintiff for non-work-related disability retirement.

On August 22, 2012, Plaintiff re-filed his chemical-exposure claim with OWCP, using the correct form, claiming that he had been exposed to a leaking package on February 4, 2011.  Plaintiff also submitted brief factual statements, from three witnesses, executed approximately ten months after the alleged incident.

However, by response dated September 18, 2012, USPS opposed the FECA application, and disputed Plaintiff's version of events.[7]  More specifically, USPS indicated that its investigation had found no evidence of a leaking package on February 4, 2011.  Further, USPS indicated that Plaintiff's email on February 4, 2011 was inconsistent with his claim of having been exposed to a leaking package.  In responding, USPS stated to OWCP as follows, in pertinent part:

> Review of Postal Service records and multiple inquiries at both the Area and District levels has confirmed that there was no hazardous spill on February 4, 2011 at the Orlando MF Annex.  Rather, on the evening of February 4, 2011, an employee working in the small Apps area reported an odor to the Supervisor.  The odor was emanating from empty equipment which had apparently come in contact with a package that had leaked on February 2, 2011.  These items were immediately isolated and placed in the Spill and Leak Area waiting disposal.  The odor disappeared once this empty

---

[7]Docket No. [#6-5] at p. 11.

equipment was removed.  No employee injuries were reported <u>and Mr. Lill's</u> <u>contemporaneous report was that he only moved empty sacks.</u>  Again, there was no spill and no leaking package on February 4, 2011 at the Orlando MP Annex.

***

Employee's original statement via email on February 4, 2011 was that there was a strong odor near the belly of the small Apps machine <u>and that he</u> <u>moved empty sacks outside.</u>  The Postal Service agrees with this account. The employee did not alleged dealing with a leaking package or any injury related to February 4, 2011 until almost 8 months later.  Further, Mr. Lill's February 4th email statement differs materially from both the statement he attached to his injury claim and from the signed witness statements he submitted.

(Docket No. [#6-5] at p. 11) (emphasis added).

On or about January 30,  2013, while his FECA application was pending, Plaintiff filed an FTCA administrative claim seeking $20 million in damages.[8]  In support of the application, Plaintiff repeated his claim that he removed a leaking package, bearing a reference to Yemen, from the USPS facility.  Plaintiff further accused USPS of lying by denying that such an event had occurred on February 4, 2011.  Additionally, Plaintiff accused USPS of "maliciously" injuring him, and of "deliberately, sabotag[ing] [his] Federal workers' compensation claim by denying the incident and destroying the package."[9]

Plaintiff further accused USPS of "maliciously" attempting to have him "removed from his position" with "fabricated" allegations.[10]  As to that assertion, Plaintiff was apparently referring to USPS's contention that Plaintiff submitted a fraudulent medical statement in connection with a request for medical leave in August 2011.  Plaintiff

---

[8]Docket No. [#6-13].

[9]Docket No. [#6-13] at pp. 10, 11.

[10]Docket No. [#6-13] at p. 12.

apparently admits that the statement from his doctor was fabricated, but claims that he had nothing to do with the statement being submitted to USPS.[11]  In fact, Plaintiff accuses his supervisor, Hickman, of fabricating the note from his doctor, in order to later accuse Plaintiff of submitting the fabricated note.[12]  In any event, as part of his FTCA administrative claim, Plaintiff acknowledged that ordinarily such a claim would be barred by FECA, though he suggested that he was somehow exempted from FECA's jurisdictional bar due to USPS's alleged malfeasance.[13]

On August 8, 2013, USPS denied the FTCA administrative claim, for at least two reasons.[14]  First, USPS reiterated that Plaintiff was fabricating the alleged spill on February 4, 2011.  Second, USPS indicated that even assuming that Plaintiff suffered a work-related injury as he claimed, his exclusive remedy was under FECA, not the FTCA.

With regard to Plaintiff's FECA claim, on August 22, 2013, and despite USPS's objection, OWCP accepted Plaintiff's claim, finding that he had been exposed to a viral substance while at work on February 4, 2011.  On August 12, 2014, OWCP amended its earlier finding to indicate that Plaintiff's work-related injury was due to exposure to an organophosphate substance.

Despite having been approved for FECA benefits, on July 25, 2014, Plaintiff

---

[11]Docket No. [#6-13] at pp. 5, 13.

[12]Docket No. [#6-13] at pp. 13-14  ("[I]t was necessary for Ms. Hickman to attempt to discredit him and deflect attention from her own earlier malfeasance **by fabricating the excuse herself**.") (emphasis in original); *see also, id.* ("It is senseless to assume that Mr. Lill had anything to do with the preparation of this excuse as he had in fact never seen it until he received the notification of his proposed removal; the only logical inference is that Ms. Hickman created the excuse herself and attempted to blame it on Lill.").  To be clear on this point, Plaintiff contends that, as part of a scheme to cover her own alleged wrongdoing, i.e., mishandling the alleged toxic spill, and to have him fired, Hickman created a letter from Plaintiff's doctor, containing false information, with the intention of then accusing Plaintiff of having submitted the false medical statement, in order to have him fired.

[13]Docket No. [#6-13] at p. 11.

[14]Docket No. [#6-14].

commenced this action pursuant to the FTCA, seeking $20 million in damages.   The
Complaint's "Preliminary Statement" indicates, in pertinent part:

> Plaintiff is claiming damages by Defendant United States of America
> *because of the negligence by the United States Postal Service ("USPS") in
> handling a package containing a toxic substance* to which Plaintiff was
> exposed while a USPS employee.

(emphasis added).   Later in the Complaint, though, Plaintiff clarifies that he does not
believe that USPS's negligence proximately caused him to be exposed to the toxin, but that
USPS's "subsequent negligence" "was the cause of the severe exacerbation which
followed."[15]   This cryptic statement is apparently clarified later in the Complaint, where
Plaintiff states:

> Defendant USPS violated its protocols for handling hazardous materials *in
> that it did not adequately document the event of February 4, 2011, did not
> identify the package or its contents to which Plaintiff was exposed and, in
> fact, destroyed or disposed of said package* without any record having been
> made of its existence.  Because of Defendants' negligence in its handling of
> this incident, it was impossible for medical personnel treating Plaintiff to
> ascertain what he was exposed to and properly treat him.[16]

(emphasis added).  The Complaint purports to assert two distinct causes of action.  The
first  cause of action alleges that USPS was negligent in failing to retain or analyze the
alleged package, which has resulted in a failure to identify the toxin to which Plaintiff was
exposed, which has prevented him from receiving appropriate medical treatment.   The
second cause of action alleges that USPS's "negligence in the handling of the package
following Plaintiff's exposure and its subsequent disingenuous refusal to admit that the
incident ever took place" resulted in a two-year delay in Plaintiff being approved for FECA

---

[15]Complaint at ¶ 13.

[16]Complaint at ¶ ¶ 17-18.

benefits, and caused him emotional distress.

Similar to his  FTCA administrative claim, the Complaint in this action also references the fact that an FTCA action is jurisdictionally barred where the subject injury is covered by FECA, but suggests that his case is somehow excepted from that rule. Specifically, the Complaint contends that "FECA is not a bar to FTCA jurisdiction" for two reasons: 1) "the FECA claim that was accepted does not pertain to the incident of February 4, 2011";[17] and 2) the USPS's alleged negligence was "not the proximate cause of the toxic exposure, but was the cause of the severe exacerbation which followed."

On September 26, 2014, Defendants filed the subject motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1), on the grounds that this Court lacks jurisdiction over an FTCA claim where, as here, the injury is covered by FECA.   In support of the application, Defendants submit an affidavit from the Deputy Director of OWCP, Julia Tritz ("Tritz"), indicating that on August 22, 2013, OWCP approved Plaintiff's claim for work-related traumatic injury, occurring on February 4, 2011, due to exposure to a chemical spill.  Tritz further indicates that between November 19, 2011 and August 31, 2014, Plaintiff received disability benefits from OPM, and that on August 29, 2014, he elected to instead receive benefits under FECA, after which,

> by letter dated September 10, 2014, Plaintiff was notified [by OWCP] that he will receive a check for disability in the amount of $18,050.23 for the period November 19, 2011 to May 31, 2013 (the gross amount of $81,666.55 minus the amount reimbursed to OPM for $63,616.32) [as well as] another check for $60,440.61 for the period June 1, 2013 to August 31, 2014 [and would henceforth] be receiving  regular disability compensation payments.

Docket No. [#6-2].

---

[17] As the factual recitation above shows, this assertion is clearly incorrect.  It is OWCP, and not USPS, which determines FECA coverage, and while USPS denied that a spill occurred on February 4, 2011, OWCP found otherwise.  Consequently, there is no legitimate basis for this factual assertion in the Complaint.

On November 21, 2014, Plaintiff filed a four-page memorandum of law [#11] in opposition to Defendants' motion.  Plaintiff acknowledges that the current state of the law requires the Court to grant Defendants' motion to dismiss.  On this point, Plaintiff admits: "It is regrettably to be acknowledged that the pertinent case law in general supports Defendants' position."[18]  Plaintiff insists, though, that the "unique circumstances" of this case require the Court to create a new rule of law:  "[H]owever, the unique circumstances of this case make it one of first impression and serious demand judicial scrutiny."[19]  That is, Plaintiff maintains that this Court should unilaterally create an exception to the well-established jurisdictional rules pertaining to FECA and FTCA, based upon USPS's alleged wrongdoing in denying that he was injured on February 4, 2011, and its subsequent alleged conspiracy with OWCP to cover-up the matter:

> It seems patently clear that Mr. Lill's compensation claim was finally established, not because of a genuine belief by USPS and OWCP that he had a compensable injury, but to avoid the scrutiny, possible embarrassment and much higher cost to defend should a court be able to examine the possibility  that a toxic package from a known hostile country was admitted to a postal facility in the United States and a worker was seriously injured and the agency then covered up the incident and denied it ever occurred. This certainly cannot be the purpose for which FECA exclusivity was intended, and the cynical attempt of Defendants to avoid judicial scrutiny by the shield of a compensation claim is unconscionable.  At the very least, Mr. Lill maintains that it is incumbent on the Court to examine the suspicious circumstances under which Mr. Lill's case was finally assigned to the [OWCP],[20] which appears to have been for the sole purpose of precluding any judicial examination of the events surrounding  his exposure and injury.

---

[18]Memo of Law [#11] at p. 3.

[19]Memo of Law [#11] at p. 3.

[20]This assertion by Plaintiff misstates what happened.  That is, he suggests that USPS caused his claim to be "assigned to" OWCP.  In fact, the only reason that OWCP is involved here is because Plaintiff filed a FECA claim, and OWCP is the agency that administers such claims. USPS had nothing to do with that.

\*\*\*

<u>As stated, this is unfortunately a case of first impression and I cannot site
[sic] any pertinent case law to guide the Court,</u>[21] as this level of duplicity by
the government appears to be unprecedented.

Pl. Memo of Law [#11] at pp. 3-4.

On December 16, 2014, Defendants filed a reply memo of law [#13] replete with
citations to relevant, binding legal authority supporting their position that this Court lacks
subject-matter jurisdiction.  Defendants also respond to Plaintiff's arguments by stating that
"subject-matter jurisdiction cannot be manufactured simply because Plaintiff claims 'judicial
scrutiny' is needed to examine an alleged 'coverup.'"[22]

On February 26, 2015, counsel for the parties appeared before the undersigned for
oral argument, at which time the Court took Plaintiff's counsel to task both for his decision
to file this action and for his comments to the media about the case which appeared in the
Rochester Democrat & Chronicle newspaper on the morning of oral argument.

## DISCUSSION

The standard to be applied on a motion to dismiss for lack of subject-matter
jurisdiction, pursuant to Rule 12(b)(1) is well settled:

A case is properly dismissed for lack of subject matter jurisdiction under Rule
12(b)(1) when the district court lacks the statutory or constitutional power to
adjudicate it. In resolving a motion to dismiss for lack of subject matter
jurisdiction under Rule 12(b)(1), a district court, as it did here, may refer to
evidence outside the pleadings. A plaintiff asserting subject matter
jurisdiction has the burden of proving by a preponderance of the evidence
that it exists.

---

[21]Indeed, Plaintiff's memo of law is devoid of citation to any form of legal authority,
preferring instead to rely on a reference to the novel "Catch-22" by Joseph Heller. *See*, Memo of
Law [#11] at p. 3, n. 2.

[22]Reply Memo [#13] at p. 3.

*Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir.2000) (Citations omitted).

Plaintiff is attempting to sue the United States of America, which, of course, enjoys sovereign immunity from being sued, except insofar as it may consent to be sued. Moreover, even in situations in which the United States consents to be sued, a court's jurisdiction is limited by the terms of the Government's consent. *See, Hercules Inc. v. U.S.*, 516 U.S. 417, 422, 116 S.Ct. 981, 985 (1996) ("The United States, as sovereign, is immune from suit save as it consents to be sued and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.") (citations and internal quotation marks omitted).  In other words, the United States decides when and how it can be sued.

On this point, it is well-settled that the United States has established FECA, and not the FTCA, as the exclusive remedy for federal employees who suffer work-related injuries. *See, Mathirampuzha v. Potter*, 548 F.3d 70, 80 (2d Cir. 2008) ("The FTCA waives the sovereign immunity of the United States for certain torts committed by federal employees, including Postal Service employees, within the scope of their employment.  *When the tort victim is also a federal employee, however, work-related injuries are compensable only under the FECA*.") (emphasis added, citations omitted).  Accordingly, "[b]ecause the FECA is an 'exclusive' remedy, it deprives federal courts of subject-matter jurisdiction to adjudicate claims brought under the FTCA for workplace injuries that are covered by the FECA." *Mathirampuzha v. Potter*, 548 F.3d at 81 (citation omitted).  Moreover, it is well settled "that where there is a substantial question of FECA coverage-indeed, unless it is certain that the FECA does not cover the type of claim at issue-the district court may not entertain the FTCA claim." *Id.*

In the instant case, Plaintiff is nevertheless attempting to sue under the FTCA to recover money damages for a work-related injury that occurred while he was a federal

employee.  However, the Secretary of Labor, by OWCP, has already determined that Plaintiff's injury is covered by FECA,[23] and the Court has no authority to review that determination, even if Plaintiff urged the Court to do so, which he has not done. *See*, *Mathirampuzha v. Potter*, 548 F.3d at 81 ("Congress has vested the Secretary of Labor or her delegate with exclusive authority to "administer and decide all questions arising under" the FECA, 5 U.S.C. § 8145, and federal courts are barred from exercising judicial review over such decisions, id. § 8128(b).") (internal quotation marks omitted).[24]

Undeterred by this, Plaintiff contends that this Court ought to create an exception to this clear jurisdictional bar, since, in his opinion, USPS acted improperly.  Plaintiff insists that this is a case of first impression that warrants something akin to an "employer misconduct" exception.  However, the Court disagrees.  In this regard, Plaintiff's argument is similar to the argument that intentional torts should be excluded from FECA's jurisdictional bar, because it is wrong to commit intentional torts.  However, that argument is clearly incorrect, since even lawsuits for work-related injuries that are caused by intentional torts are subject to FECA's jurisdictional bar. *See, e.g., Gomez v. Warden of Otisville Correctional Facility*, No. 99 Civ. 9954(AGS), 2000 WL 1480478 at *3 (S.D.N.Y. Sep. 29, 2000) (observing that FECA provides the exclusive remedy for work-related injuries, including injuries caused by intentional torts).

Furthermore, even if the Court believed, which it does not, that it could conjure such an exception to Congress' clear jurisdictional bar in certain particularly-egregious cases of

---

[23]The determination of whether FECA applies is made by the Secretary of Labor, not the USPS. The Secretary of Labor has found that Plaintiff was injured by exposure to the package.  The fact that the USPS disputes Plaintiff's version of events is really irrelevant to the jurisdictional issue that is before the Court.

[24]The Second Circuit has mentioned that "several appellate courts have held that an implicit and narrow exception to the bar on judicial review [of the Secretary of Labor's determination] exists for claims that the agency exceeded the scope of its delegated authority or violated a clear statutory mandate." *Mathirampuzha v. Potter*, 548 F.3d at 83.

government misconduct concerning the evaluation of an employee's FECA claim, it is far from clear that the Government acted in a manner that would warrant such treatment in the instant case.  Most notably, USPS correctly observes that Plaintiff's email to Hickman on February 4, 2011, written minutes after the alleged contamination, stated only that he handled *empty mail sacks* that were emitting a bad odor, without any mention of a leaking package from Yemen.  At oral argument, even Plaintiff's attorney conceded that such fact was puzzling.  Such fact alone would be sufficient to explain USPS's skepticism toward Plaintiff's workers' compensation claim, and additionally, is consistent with USPS's theory that any odor which Plaintiff smelled was mere residue from an earlier spill.  Consequently, although OWCP accepted Plaintiff's version of events, the Court cannot say, from the limited record before it, that USPS's contrary position was unreasonable, let alone fraudulent or malicious.

On the other hand, Plaintiff's allegations of a fraudulent cover up by multiple federal agencies, while perhaps appealing to conspiracy theorists, strike the Court as being irresponsible and disingenuous.  In this regard, the Court will cite two examples, although there are others.  First, Plaintiff repeatedly implies that USPS had no excuse for failing to retain and analyze the alleged leaking package, since he told Hickman about the package in his email on February 4, 2011.  However, as already discussed, Plaintiff's email to Hickman said nothing about a package, and his suggestion is therefore disingenuous.  Beyond that, Plaintiff seems to attribute clairvoyant abilities to USPS, inasmuch as his theory is that USPS "disappeared"[25] the leaking package "under cover of darkness,"[26] at

---

[25]This is a term that Plaintiff claims to have appropriated from Joseph Heller's novel "Catch 22."

[26]*See*, FTCA Complaint, Docket No. [#6-13] at p. 16. ("[F]or reasons one can only guess at, the agency chose to cover up the incident, remove under cover of darkness, the offending material, deny the existence of the material or the incident, even in the face of numerous witnesses, and then go so far as to attempt to accuse an innocent, seriously ill worker or

a time when he was not yet ill, so that it could deny, in the event that he ever filed a FECA or FTCA claim, that the alleged toxic spill ever occurred.  That theory is simply not plausible.

Second, Plaintiff alleges that USPS conspired with, and essentially controlled the activities of, OWCP, a separate federal agency, in order to cover up USPS's alleged wrongdoing.  In support of his position, Plaintiff states:  *"By telling OWCP to create a compensation claim for Mr. Lill* thirty months after the fact and only after having received his FTCA claim, USPS act[ed] in the cynical hope that this claim can be swept under the carpet."[27] (emphasis added).  However, with regard to this theory, apart from the fact that Plaintiff has provided no basis to believe either that USPS controls OWCP's actions or that USPS ever changed its position that Plaintiff's illness is not work-related, one must wonder why, if it was USPS's intent to "hush up" the incident and avoid an FTCA claim, it opposed Plaintiff's FECA claim in the first place?  Why did not USPS simply agree that the injury was work-related, and thereby ensure that no FTCA claim could ever be brought?  Plaintiff provides no explanation, and this inter-agency conspiracy aspect of Plaintiff's claim is therefore also implausible.

With regard to this discussion of Plaintiff's claims and theories, the Court is aware that some of its comments herein or made during oral argument may be seen as questioning Plaintiff's truthfulness.  The Court wishes to clarify that its comments are not meant to impugn the character of Mr. Lill, for whom the Court has only sympathy, or his attorney.  Nor is the Court resolving issues of fact or credibility.  Rather, the Court's intent is to point out, with regard to Plaintiff's legal argument, that while one may disagree with USPS's position, one ought to be able to recognize that there is at least an arguable basis,

---

fabricating information in an attempt to remove him for fraud.").

[27] Pl. Memo of Law [#11] at p. 4.

15

if not a very good basis, for USPS's continued skepticism toward Plaintiff's claim.  More specifically, Plaintiff's failure to mention a package in his February 4, 2011, email would present a formidable obstacle to the success of his claim, even if an employer's misconduct could create jurisdiction for an FTCA claim, which it cannot.

Lastly, during oral argument Plaintiff's counsel raised the adequacy, or rather, the inadequacy of FECA benefits, and indicated that OWCP had denied many of Mr. Lill's requests for medical payments.  In simple terms, Plaintiff contends that FECA benefits are not a monetarily adequate remedy for someone with his medical condition.  However, to the extent that Plaintiff argues that this fact enables the Court to disregard FECA's exclusivity provision and proceed in the absence of jurisdiction, he is mistaken.  The Court sympathizes with Mr. Lill's situation, although the when, how, and where of his condition are subject to debate. In any event, the solution to that problem lies with Congress or the Department of Labor, not with this Court. To request otherwise is to suggest that this Court abdicate its sworn responsibility to follow the law as it exists and instead legislate from the bench.

## CONCLUSION

Defendants' motion to dismiss for lack of subject-matter jurisdiction [#6] is granted and this action is dismissed with prejudice.

SO ORDERED.

Dated:      Rochester, New York
            March 3, 2015

ENTER:


/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge